AFFIDAVIT IN SUPPORT OF APPLICATION FOR A COMPLAINT

I, Dustin Poulin, being sworn, state:

INTRODUCTION

1. I am a Special Agent employed by the Federal Bureau of Investigation ("FBI"), and have been so employed since June 2015. I am currently assigned to the FBI's Boston Field Office and the FBI North Shore Gang Task Force. As an FBI Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of the federal narcotics laws in Title 21 of the United States Code.

2. As an FBI Special Agent, I have participated in many aspects of narcotics investigations, including conducting physical and electronic surveillance, analyzing telephone toll information obtained through subpoenas, analyzing information obtained through court-ordered pen registers and trap and trace intercepts, overseeing the activities of and debriefing confidential human sources, and executing arrest and search warrants. I have coordinated controlled purchases of illegal drugs using confidential sources and cooperating witnesses. I have interviewed admitted drug traffickers, drug users, informants, cooperating defendants, and local, state, and federal law enforcement officers regarding the manner in which drug traffickers distribute, obtain, finance, store, manufacture, transport, and distribute illegal drugs, including heroin and fentanyl. As such, I am familiar with the methods, routines, and practices of individuals involved in the use, sale, and trafficking of narcotics. I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, dispense, import, export, and use controlled substances such as methamphetamine, fentanyl, heroin, cocaine, marijuana, and prescription medications. Based on

my training and experience, I am familiar with the appearance, packaging, and texture of many controlled substances, including heroin and fentanyl.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of a Criminal Complaint charging CRISHANTY AYBAR ARIAS, date of birth xx/xx/1997 ("AYBAR"), with Possession of Fentanyl with Intent to Distribute, in violation of Title 21, United States Code, Section 841(a)(1), on August 15, 2019.

5. I am familiar with the facts and circumstances of this investigation from my own personal participation in the investigation, from discussions with other law enforcement officers who participated in the investigation, and from the other sources of information set forth herein.

6. This affidavit is submitted for the limited purpose of establishing probable cause to believe that AYBAR has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

7. In June 2019, officers engaged in a narcotics investigation conducted a traffic stop of a vehicle. The driver had a suspended license and possessed about $100 worth of marijuana, and was on state parole. The driver offered to assist law enforcement by identifying a person the driver claimed was selling fentanyl, and by making controlled purchases of fentanyl from that person, in exchange for law enforcement considering not to bring charges for the suspended license or the marijuana possession. Such charges have not yet been filed against the driver.

8. Thereafter, the driver served as a confidential informant ("CI") assisting law enforcement, including members of the North Shore Gang Task Force, with an investigation of the person identified by the CI, whom the CI knew as "Manin."

9. The CI has convictions for various offenses, including a drug crime, larceny, obstructing a police officer, and witness tampering.

10. The CI told law enforcement that Manin was selling fentanyl and heroin from an address in Lawrence, MA ("Residence 1") and also from locations near Residence 1. The CI described Manin as a Hispanic male in his early 20s with braids. The CI stated that Manin drove a black Honda Accord and sometimes also a white Honda Accord. The CI stated that he/she would contact Manin by calling (978) 398-5943.

11. Based on queries of law enforcement databases and social media sites, officers learned that AYBAR was a person associated with Residence 1. AYBAR's address on record with the Massachusetts Registry of Motor Vehicles was Residence 1. Law enforcement officers showed the CI the RMV photo of AYBAR. The CI confirmed that the photo depicted the person the CI knew as "Manin."

12. According to law enforcement databases, a female whose initials are J.V., date of birth xx/xx/1995, also was associated with Residence 1. Social media sites indicated that Manin and J.V. were in a romantic relationship and had at least one child with another on the way. According to Registry of Motor Vehicles records, a black Honda Accord (MA registration 9BL783) and a white Honda Accord (MA registration 7GV927) were registered to J.V.

The First Three Controlled Buys

13. The CI made three controlled purchases from AYBAR in July 2019. The same law enforcement procedures were used for each transaction. On each occasion the CI called (978) 398-5943 in the presence of law enforcement officers; spoke with a person the CI identified as Manin (AYBAR); and arranged to buy a specific amount of fentanyl from AYBAR at Residence 1 for a specific price. Officers searched the CI and the CI's vehicle for contraband and cash with negative

results, and then gave the CI agency funds in the agreed-upon amount in order to make the purchase. Officers set up surveillance of Residence 1, while other officers watched the CI drive without stopping to Residence 1. During the first and second transactions, officers saw a Hispanic man exit the front of Residence 1 and interact briefly with the CI. During the third transaction, officers saw the front door of Residence 1 open and saw that the CI was interacting with someone, but officers did not see that person. Based on their training and experience, officers believed that all three interactions were consistent with hand-to-hand drug transactions. After each transaction, the CI returned to the CI's vehicle. Officers followed the CI as the CI drove without stopping to a predetermined location to meet with officers. The CI gave officers a baggie of suspected fentanyl and stated that AYBAR was the person who had sold it to the CI. The amount of suspected fentanyl was consistent with the amount of agency funds the CI had been given. Officers again searched the CI and his/her vehicle for contraband and cash with negative results. The suspected fentanyl was entered into evidence.

14. After the first two controlled transactions, AYBAR immediately got into a black Honda Accord parked in the driveway of Residence 1.

15. On July 30, 2019, officers conducting surveillance of Residence 1 saw large amounts of trash, furniture, and moving boxes in the driveway, and no vehicles parked in the driveway. They suspected that AYBAR had moved. The CI confirmed this and gave officers AYBAR's new address in Lawrence ("Residence 2").

The Fourth Controlled Buy

16. During the first two weeks of August 2019, the CI made a fourth controlled purchase from AYBAR. The CI called (978) 398-5943 in the presence of law enforcement officers; spoke with a person the CI identified as Manin (AYBAR); and arranged to buy a specific amount

4

of fentanyl from AYBAR for a specific price at a specific location. Officers searched the CI and the CI's vehicle for contraband and cash with negative results, and gave the CI agency funds in the agreed-upon amount in order to make the purchase.

17. Officers surveilling Residence 2 saw AYBAR exit the house, get into a white Honda Accord (MA registration 7GV927), and drive to the meet location without stopping. Other officers followed the CI as the CI drove to the meet location without stopping.

18. Officers saw the CI and AYBAR briefly interact. Based on their training and experience, officers believed the interaction was consistent with a hand-to-hand drug transaction.

19. Officers loosely surveilled AYBAR as he drove the Accord back to Residence 2. AYBAR took a longer, non-direct route back. Based on the officers' training and experience, they believed this behavior was consistent with a practice known to be used by drug dealers to try to lose any law enforcement officers who might be following them. Trooper Dolan, who was surveilling Residence 2, saw AYBAR pull into the driveway of Residence 2 in the white Honda Accord. AYBAR stayed in the Honda for about 20 minutes before getting out of the car and entering Residence 2.

20. Meanwhile, other officers followed the CI as the CI drove without stopping from the transaction location to a predetermined location to meet with officers. The CI gave officers a baggie of suspected fentanyl and stated that AYBAR was the person who had sold it to the CI. The amount of suspected fentanyl was consistent with the amount of agency funds the CI had been given. Officers again searched the CI and his/her vehicle for contraband and cash with negative results. The suspected fentanyl was entered into evidence.

21. I have found the CI's information to be reliable. The investigation confirmed the accuracy of the CI's information about Manin's addresses and the vehicles he drives. In addition,

the CI's information about Manin selling fentanyl was corroborated by officers conducting surveillance of the first and second controlled buys, who saw the CI engage in what appeared to be hand-to-hand drug transactions with a Hispanic man at a residence associated with AYBAR. Officers conducting surveillance of the fourth controlled buy actually saw AYBAR leave Residence 2, drive to the agreed upon location, interact with the CI in a manner consistent with a hand-to-hand drug transaction, and return to Residence 2.

The Search Warrant for Residence 2

22. Based on the four controlled purchases, on August 12, 2019, Massachusetts State Police Trooper Alfred Burgos applied for a search warrant for Residence 2. The warrant was signed on August 12, 2019, by Andrew Gradzewicz, Assistant Clerk of the Lawrence District Court. The warrant authorized officers to search Residence 2 for heroin and fentanyl and related materials, products, equipment, records, books, keys, and currency. The warrant was valid for seven days.

23. On August 15, 2019, officers went to Residence 2 to execute the search warrant. The white Honda Accord (MA registration 7GV927) was parked in the driveway. At approximately 11:30 am, officers saw AYBAR walk out of the house and get into the Honda. When officers approached the Honda, AYBAR threw two twist-tied baggies containing suspected narcotics out of the front passenger window. Officers removed AYBAR from the Honda, handcuffed him, and recovered the two baggies.

24. Officers then entered Residence 2. No one was home. They brought AYBAR upstairs to the kitchen, where they read him his *Miranda* rights in Spanish and gave him a copy of the search warrant. AYBAR said he understood his rights and signed a *Miranda* waiver written in Spanish. AYBAR then volunteered that there were drugs in an oatmeal container located on top of the refrigerator. Officers opened the container and retrieved approximately five or six baggies of

suspected narcotics. They also found a scale in the kitchen and another baggie of suspected narcotics in a bedroom dresser drawer.

25. Based on my training and experience, the manner in which the suspected narcotics were packaged and the presence of the scale were consistent with drug distribution.

26. The baggies that AYBAR threw out of his car window, the baggies found in the oatmeal container, and the baggie found in the dresser drawer were sent to the DEA lab for analysis. On September 13, 2019, a DEA lab chemist orally reported to me that, based on preliminary testing, six of the baggies seized from AYBAR contained a substance or mixture that tested positive for the presence of fentanyl. On September 16, 2019, the DEA lab issued a Chemical Analysis Report concluding that one of the baggies seized from AYBAR contained 2.191 grams of a substance or mixture that did not test positive for a controlled substance.

## CONCLUSION

27. Based on the foregoing, there is probable cause to believe that on August 15, 2019, CRISHANTY AYBAR ARIAS did knowingly and intentionally possess fentanyl with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

I declare that the foregoing is true and correct.

_____
Dustin Poulin
Special Agent, FBI

Subscribed and sworn to before me,
this 18th day of September, 2019.

_____
Honorable Jennifer C. Boal
Chief United States Magistrate Judge
District of Massachusetts